McKEE, Circuit Judge,,
dissenting.
I agree that the foreclosure sale has not mooted this appeal, and I therefore join, in Part III.A of the majority opinion. However, even assuming arguendo that the majority correctly concludes that the RTC’s dismissal defeated federal jurisdiction, I cannot agree that we can uphold the exercise of *1512 supplemental jurisdiction over this state law foreclosure action. Although Congress may well be able to provide for a federal court to retain jurisdiction over state law claims once the RTC was dismissed here, that is not the issue. The majority states that “[t]he question before us now is whether Congress could extend this jurisdiction to include cases to which the RTC was a party, but is no longer, without exceeding the bounds of Article III.” Maj. Op. at 1505. Having gone in at the wrong place, it is perhaps not surprising that the majority has come out at the wrong place. The question posed is not the issue. Rather, the question is whether Congress did so extend this jurisdiction. Our inquiry, though simply stated, is not so simply resolved. We need to determine if Congress intended to so extend our jurisdiction when it enacted 28 U.S.C. § 1367. For the reasons that follow, I conclude that it did not, and I therefore must respectfully dissent from the majority opinion.
In relevant part, 28 U.S.C. § 1367 provides as follows:
(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under ... the Constitution.
28 U.S.C § 1367(a) (emphasis added). Under the statute as drafted a court can exercise supplemental jurisdiction only if it has original jurisdiction. If it does not have jurisdiction over the underlying claim there is nothing to supplement. Here, the majority first holds that the “Time of Filing” rule does not apply and concludes that the district court lost subject matter jurisdiction once the RTC was dismissed. However, it then proceeds to declare that the court nevertheless has original jurisdiction, and can therefore exercise supplemental jurisdiction because jurisdiction originally attached when the RTC was a party. It can not be both ways. If the “Time of Filing” rule does apply, the district court had jurisdiction to enter summary judgment. That jurisdiction, however, must arise not from the supplemental jurisdiction conferred in 28 U.S.C. § 1367, but from the substantive grant of jurisdiction contained in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1441a(l)(1) (“FIRREA”). If the “Time of Filing” rule does not apply, there is no federal jurisdiction for any jurisdiction under 28 U.S.C. § 1367 to supplement.
In holding to the contrary, the majority relies heavily upon Gutierrez de Martinez v. Lamagno, — U.S. —, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995), however that case did not involve supplemental jurisdiction under section 1367, and is therefore inapposite to the inquiry here. The issue in Lamagno was the scope of the jurisdictional grant that Congress intended under the Westfall Act. Under that Act if a federal employee is sued, the Attorney General certifies whether or not the employee was acting within the scope of his or her federal employment at the time of the injury that forms the basis of the plaintiffs claim. If the Attorney General certifies that the individual was within the scope of his or her employment, the United States is substituted as a party, and the action is removed to federal court. If the Attorney General certifies to the contrary, the United States is not substituted as a party, and the action remains in state court, absent some other basis for federal jurisdiction. In Lam-agno, an issue arose as to whether a federal court can review the certification of the Attorney General. Although the Court did discuss the parameters of the judicial power contained in Article III, the decision had nothing to do with supplemental jurisdiction. Indeed, the statute was never cited. The same is true of Garcia v. U.S., 88 F.3d 318 (5th Cir.1996) which the majority also relies upon. That ease was also decided under the Westfall Act, however, it had the further dimension of determining whether a federal court lacked subject matter jurisdiction over the underlying dispute if a court reversed the Attorney General’s certification and concluded that the United States could not be substituted as a party. The court stated
[w]e agree with the Lamagno plurality that, because of the Attorney General’s *1513 certification, there is an initial colorable federal question. Accordingly, we agree likewise that there is no ‘grave’ Article III problem in a district court retaining jurisdiction after rejecting the Attorney General’s certification.
Garcia, 88 F.3d at 325. However, that conclusion was based upon a very technical parsing of the precise language of the statute. Thus, resolution of jurisdictional issues under the statutory framework of the Westfall Act does not advance our inquiry under 28 U.S.C. § 1367 nearly so far as the majority concludes. The same is true of nearly all of the authority that the majority relies upon for its holding as to supplemental jurisdiction.
Surprisingly, the majority cites Mollan v. Torrance, 22 U.S. (9 Wheat.) 537, 6 L.Ed. 154 (1824) and Clarke v. Mathewson, 37 U.S. (12 Pet.) 164, 9 L.Ed. 1041 (1838) to suggest that section 1367 provides supplemental jurisdiction because the court had jurisdiction at the outset of the litigation. See Maj. Op. at 1507. Those eases strongly suggest that the majority is in error in not relying upon the “Time of Filing” rule in determining if jurisdiction was lost when the RTC was dismissed. In Mollan, the Supreme Court stated “[i]t is quite clear, that the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events.” 22 U.S. at 539. Similarly, in Clarke, the Court noted
It has not been the course of the courts of the United States to consider their jurisdiction, after it has once attached, as taken away by the subsequent change of residence of the party. A suit properly commenced between citizens of different states still proceeds; although the parties may, before its termination, become citizens of the same state.
37 U.S. at 167. In St. Paul Mercury Indemnity Co. v. Red Cab, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938) the Supreme Court reiterated the “Time of Filing” rule as first pronounced in Mollan. In Red Cab, the Court held that jurisdiction must be established from the good faith averments on the face of the complaint, and once established it is not defeated by subsequent events. “Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.” 303 U.S. at 289-90, 58 S.Ct. at 590-91.[1] This precedent does not support the majority’s holding under section 1367, and it undermines the majority’s reasoning for rejecting the “Time of Filing” rule. Nevertheless, assuming arguendo that this precedent can properly be limited to diversity jurisdiction as the majority suggests, the majority’s reasoning still leaves a court free to exercise supplemental jurisdiction when it has no jurisdiction to supplement.
More recently in Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (See Maj. op. at 1507, n. 10) the Supreme Court, again upheld the “Time of Filing” rule in rejecting the idea that the standing of parties who were added after litigation was begun could create a sufficient case or controversy for Art III jurisdiction even if the original plaintiffs lacked standing.
The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.... It cannot be that, by later participating in the suit, the State Department and AID retroactively created the redressability (and hence jurisdiction) that did not exist at the outset ... There is no support for the dissent’s novel contention, ... that Rule 19 of the Federal Rules of Civil Procedure, ... somehow alters our longstanding rule that jurisdiction is to be assessed under the facts existing when the complaint is filed.
504 U.S. at 569, 112 S.Ct. at 2141.
However, if the “Time of Filing” rule does not apply here, it is nevertheless clear that 28 U.S.C. § 1367 does not intend that a federal court exercise jurisdiction over a state law claim unless the federal claim that the state claim supplements is properly before the court. I do not think that the Congress intended to allow the exercise of *1514 federal jurisdiction to resolve a uniquely state claim where, as here, the federal court concludes that it has no original federal jurisdiction. We are, after all, interpreting a jurisdictional statute.
The policy of the statute calls for its strict construction.... Due regard for the rightful independence of state governments, which should actuate federal courts requires that they scrupulously confíne their own jurisdiction to the precise limits which the statute has defined.
Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934).
This is not a case where there are federal claims and state claims that “derive from a common nucleus of operative facts ... such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.” United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Gibbs is the source of the “modern doctrine of pendent jurisdiction”, Carnegie-Mellon University v. Cohill, 484 U.S. 343, 348, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988), and it teaches that, under the appropriate circumstances, a federal district court possesses the discretionary power to decide claims based on state law. Gibbs, 383 U.S. at 725-26, 86 S.Ct. at 1138-39. As the majority notes,' the doctrine of pendent jurisdiction is now codified in the supplemental jurisdiction statute. 28 U.S.C. § 1367. However, as noted above, that jurisdiction only exists in civil actions “of which the district courts have original jurisdiction.” Thus, the only way the majority can justify its contrary result is by relying upon the very “Time of Filing” rule that it rejects in the first instance.
Nor is this a question of abuse of discretion where a court properly has discretion to exercise its supplemental jurisdiction. We are confronted with an error of law arising from what I believe is an erroneous application of a legal principle occasioned by an incorrect reading of the supplemental jurisdiction statute. I think it clear that the district court’s action can not survive the plenary review we must give it. Accordingly, the majority’s emphasis on the fact that the district court has already invested a great deal of time and resource in adjudicating this matter is irrelevant. It is axiomatic that a federal court cannot give itself jurisdiction where none exists. Although the resources that the district court has invested in resolving this case would most certainly be relevant to an exercise of the court’s discretion to exercise supplemental jurisdiction of a case properly before it, it is irrelevant to the question of whether the court had jurisdiction over the state law claims to begin with. The original subject matter jurisdiction that is the condition precedent for the exercise of supplemental jurisdiction can not be conferred by considerations of convenience and efficiency.
The majority’s interpretation of 28 U.S.C. § 1367 is even more perplexing given the recognition of the unique state interests that are implicated in a foreclosure action, and the limited scope of federal jurisdiction,
our reading of the statute is consistent with the purpose of FIRREA as expressed in the statute and its legislative history. We also note that our reading is consistent with general policies underlying federal jurisdiction. These principles include the limited nature of federal jurisdiction and the goal of not interfering in the business of the states.
The limited nature of federal jurisdiction needs little discussion. This principle marks a fundamental precept of the American court system. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374, 98 S.Ct. 2396, 2402-03, 57 L.Ed.2d 274 (1978). Interpreting [FIRREA] narrowly comports with this general rule.
Maj. op. at 1502. Here again, the majority attempts to have its analytical pie and eat it too. However, I fail to see how the majority can justify giving a narrow interpretation to the jurisdictional inquiry under FIRREA (and thereby departing from Molían and its progeny) while giving such an expansive interpretation to section 1367.
Here, the RTC had no interest in the New Jersey real estate that was the subject of the mortgage hen, nor was the RTC a promisee under any instruments that created the disputed indebtedness. The RTC is merely a successor in interest to some of the parties to the original lawsuit. That suit was actually initiated in state court by private entities that had an interest in the litigation. The RTC then removed it to state court, but is no *1515 longer a party. Now, through dubious reasoning, we allow the federal court to which this state action was removed to adjudicate purely state claims that are unconnected to the RTC or any other federal agency,
New Rock’s Amended Complaint avers:
3. Plaintiff, New Rock, is the sole owner and holder of all right, title and interest in the Indebtedness ... pursuant to the Mortgage Assignments ...
31. New Rock has succeeded to all of RTC’s right title and interest....
See Maj. op. at 1495. If that is so, I do not understand how 28 U.S.C. § 1367 can be interpreted to allow a federal court to adjudicate New Rock’s dispute.[2] Indeed, the analytical sleight of hand that allows the majority to rely upon the very principles it rejects has the end result of giving us the “jurisdiction by contract” it tried to avoid in refusing to apply the “Time of Filing” rule in the first instance. Id. at 1498. (“[T]he RTC cannot pass its jurisdictional rights by contract.”)
Accordingly, I cannot join in the majority opinion.

. Our decision in Valhal Corp. v. Sullivan Assoc., Inc., 48 F.3d 760 (3d Cir.1995) is not to the contrary. There, we determined that the jurisdictional amount averred on the face of the complaint could not have been satisfied as a matter of law when the complaint was filed.

. I respectfully submit that, once again, the majority asks the wrong question, and that causes them to once again come out at the wrong place. At the outset of its supplemental jurisdiction analysis the majority asks: “Can this continuing jurisdiction over a state claim exist when, rather than the federal claim being eliminated, the federal claim itself becomes a state claim?” See Maj. op. at 1505. However, the state claims existed before the RTC became involved, and the dismissal of the RTC did not cause the federal claims to “morph” into state claims.